PENNSYLVANIA COAL COMPANY *vs.* THE PRESIDENT, MAN-
AGERS AND COMPANY OF THE DELAWARE AND HUDSON
CANAL COMPANY.

There is no latent virtue in the word " toll," to exempt a contract in which it
is employed, from the ordinary rules of construction; and a toll, like any other
debt, cannot be demanded until its amount shall be ascertained. *Per*
CLERKE, J.

The defendants (a canal company) agreed with the plaintiffs (a coal company)
to allow the latter to transport coal on the canal of the former, in the same
manner, and with the same facilities, as they themselves or any other per-
sons might enjoy; providing specially for a rate of tolls, to be established
*on the 1st of May* in *each year*, by ascertaining the quantity of lump coal
belonging to the defendants, which at that period they should have con-
tracted to sell, and to deliver at Rondout, by transportation on their canal,
during that year. The average price per ton of those sales should then be
ascertained, and from that average price two dollars and fifty cents should
be deducted; and one half of the remainder should be the toll per ton to
be charged by the plaintiffs, for the transportation of their coal, during that
year. In case the quantity of lump coal which, on the 1st of May, should
have been sold, should be less than one half of the *estimated* sales for the
year, then the toll, during that year, should be calculated on the average
price per ton at which the sales should have been actually made. On a con-
troversy arising, between the parties, under the latter clause of this agree-
ment,

*Held* that the employment of the word "toll," in the agreement, did not, *ex
vi termini*, give the canal company any right to the collection of it before
its amount was ascertained; and it appearing that the amount of the tolls
payable by the coal company could not be precisely ascertained before the
expiration of the year, it was *further held* that the canal company could not,
previous to that period, enforce immediate payment from the coal company,
on account, by a *proximate estimate* of the tolls.

APPEALS, by both parties, from a judgment entered at a
special term, in favor of the defendants, for costs. The
opinion of the court contains all the facts necessary to be
stated.

*A. H. Green*, for the plaintiffs.

*Hiram Ketchum*, for the defendants.

*By the Court*, CLERKE, J. The defendants agreed with the plaintiffs, in substance, as follows: To allow them to transport coal on the Delaware and Hudson canal, in the same manner, and with the same facilities, as they themselves (the canal company) or any other persons may enjoy; providing specially for a rate of tolls, to be established on the 1st of May in every calendar year, by ascertaining the quantity of lump coal belonging to the Delaware and Hudson Canal Company, which at that period they shall have contracted to sell, and to deliver at Rondout, by transportation on their canal, during the year. The average price per ton of those sales shall then be ascertained. From this average price $2.50 shall be deducted, and one half of the remainder shall be the toll per ton to be charged to the plaintiffs for the transportation of their coal during the said calendar year. So far the arrangement is very definite, and scarcely admits of any misconception.

But the agreement subsequently provides if the quantity of lump coal, which, on the 1st of May, shall have been sold, shall be less than one half of the estimated sales for the year, then the toll, during that year, shall be calculated on the average price per ton at which the sales shall have been *actually* made. Of course, in that contingency, no average could be struck until the expiration of the year.

There are other stipulations relating to the toll, but these are the only provisions to which it is important for us to advert.

It is under the contingency referred to in this latter clause, that the difficulty, which has produced this action, has arisen. We at once perceive that under the first clause, where the sales contracted for by the canal company, before the first of May, equal or exceed one half of the estimated sales of the whole year, the toll can be fixed at that time, and consequently they become entitled to payment of it, after the weighing of each cargo at Eddyville, where the weigh-lock is situated. But the Pennsylvania Coal Company contend when the quan-

tity of coal contracted for by the canal company, before the 1st of May, is less than one half of the estimated sales for the whole year, and the rate of toll by the terms of the last mentioned clause cannot be fixed until the expiration of the year, that they are not bound to pay any toll until that time.

In the one case the toll can be precisely ascertained on the 1st of May, and payment therefor enforced in the ordinary way; in the other it is plain that it is incapable of calculation until the expiration of the calendar year. This inability, from the want of adequate data, in fact, occasioned the necessity of the provision, which both parties have alike recognized by inserting it in their contract.

The canal company insist, however, that they have a right to enforce immediate payment, on account, by a proximate estimate of the tolls, not venturing to deny that they can only at the expiration of the year be precisely ascertained.

But can this be granted in the absence of any express provision permitting it? Under any circumstances, can payment for the use of any thing, for the purchase of any property, for any service, or for any other benefit, be enforced, until the amount shall be absolutely ascertained? As a general rule, no one is obliged to perform a contract until its nature, limit and conditions are ascertained and prescribed. No debt can be legally demanded until its amount is capable of being estimated. If A. engages B. to go to Rome, and promises to pay all the expenses which he incurs on the route, B. cannot compel payment of any portion of his expenses until he completes the journey, unless he has taken the precaution to have it expressly understood that A. shall pay him the several portions of the outlay as they are incurred. I can discover no essential difference on the point involved between such a case and that now before us, except that the latter relates to tolls, which, it is said, necessarily imply immediate payment. Is there, indeed, any peculiar virtue in the word "toll," which gives it so potent an effect as to lift any contract, in which it is employed, above the ordinary rules of construction? And

after sifting this case thoroughly, and disengaging it from all irrelevant topics, we shall find that this is the only question that remains for consideration.

Does the word "toll," which is employed throughout this agreement, import, *ex vi termini*, an instant collection, as soon as the weight of the cargo is ascertained at the usual place ? "Toll" is a Saxon word, originally signifying a payment in towns, markets and fairs, for goods and cattle bought and sold there. It is defined in the Institutes to be a reasonable sum of money due to the owner of the fair or market, upon sale of things tollable, within the same. It is now, also, popularly applied to the charges which canal and rail road companies require for the transportation of goods, payable no doubt at once, in all cases, where there is no right or arrangement importing the contrary—precisely as goods sold are presumed to be sold for cash, unless by express terms, or from the circumstances of the case, the transaction shows a credit. The word means nothing more than a compensation for the privilege or service granted or rendered ; and the period of payment depends entirely, as in every other case, upon the express or implied understanding of the parties. The right of the canal company, in this respect, is not at all enlarged by the charters which it has received from the states of Pennsylvania and New York. It is, indeed, permitted by these charters to exact certain tolls and rates, not exceeding three cents per mile, for every ton of ascertained burden in every vessel. But even in such cases, where the rate is fixed, the toll cannot be exacted until the burden is ascertained, so that the amount payable must be certain before it can be demanded. Nothing appears in these charters impressing on the word "toll" a signification which, *ex vi termini,* imports an immediate right of collection, where the terms of the contract are inconsistent with it. They do not, in other words, contain any immunities to the company, shielding them from the effect of the ordinary meaning of the language, or the ordinary consequences of the want of circumspection and care in

the preparation of their contracts. The employment of the word " toll," therefore, does not, *ex vi termini,* give the canal company any right to the collection of it before its amount is ascertained. And as I have already intimated, the contract itself contains nothing from which it can be satisfactorily and legally inferred, that the parties intended, in the contingency contemplated in this clause of the agreement, that the tolls should be payable before the expiration of the year. To be sure, immediate payment is provided for in the first clause; but this is no reason why we should legally infer that this was intended on the happening of the contingency mentioned in the provision under consideration. Indeed, the presumption is at least as much in favor of the opposite supposition. In the one, immediate payment was expressly provided for, because the amount could be ascertained with certainty; in the other, it may be fairly assumed that immediate payment was dispensed with, and payment postponed until the expiration of the year, because the amount could not be ascertained with certainty until that time. And may it not be plausibly maintained, if the parties designed payment on account, by some proximate calculation, that they would have declared it? Their attention was, most manifestly, directed to the subject of payment, by contemplating the contingency; and, if they deemed it practicable and convenient, common prudence, of which we are not to presume any one destitute in matters in which important interests are concerned, would have required a suitable provision for this purpose, expressly set forth in the contract. For, assuredly, neither party would be willing to leave it to the interested conjectures of the other to make what is called a proximate estimate, without at least specifying some principles on which the computation should be made.

It would, indeed, have been more convenient for the canal company to receive the tolls, and it may be a very serious detriment not to have received them, as the weight of each cargo was successively ascertained at the weigh-lock in Eddyville; on the other hand, it would be equally convenient for the coal

company *not* to pay them until their amount should be definitely ascertained.   So far as it may be presumed such considerations operated on the minds of the parties in making this contract, they may be deemed counterpoised ; and a cautious reserve and silence might have been regarded by each as the best policy.   Or, which is more likely, each might have been willing to trust to the liberality of the other, and not to rely, as to this point, on a strictly legal right.   They are both respectable, wealthy, and powerful companies—not petty traders. We are not to suppose that the one apprehended hazard by the retention of the dues by the other until the end of the year, or that both were not inclined to yield material favors and forbearance, respecting an arrangement likely to endure for many years, of great magnitude, and of great advantage to both.   If, under the first clause, immediate payment was yielded by the one; under the contingency contemplated in the latter, a postponed payment may, with a very good grace, be yielded by the other.   Generally, the canal company would receive immediate payment, as the method prescribed by the first clause would in the great majority of years obtain; the method prescribed in the other, would be contingent and exceptional.   Thus, occasionally, without any serious sacrifice of interest, it would be nothing unprecedented or extraordinary that they should wait for a few months, for payment, from their very safe and very profitable customer.

But, without indulging in any speculation on the possible intentions of the parties, it is enough for me to say that the language of the provision referred to necessitates no such construction as the canal company demand.   There is no latent virtue in the word " toll," to exempt a contract, in which it is employed, from the ordinary rules of construction ; and a toll, like any other debt, cannot be demanded until its amount shall be ascertained.   Nothing more clearly demonstrates the wisdom of adhering to this rule, than the consequences which a departure from it would exhibit in this case.   If the canal company are allowed to collect the tolls before their rate can

be established, what amount shall be exacted, and who shall determine the amount? By a proximate estimate? By whom? Shall it be left to the arbitrary, perhaps biased, estimate of the interested party? The law abhors arbitrary power in the private as much as in the public relations. It allows no man to be a judge in his own cause; he must await the arbitrament of disinterested authority. The canal company demanded, as a proximate estimate, 55 cents per ton, on their own mere conjectural computation; they afterward reduced it to 50. They might as well have demanded 60 or 70. They had no more authority to demand 50, than the coal company had to insist on the payment of 40. Neither, in short, could coerce the other, until the amount actually payable should be ascertained in the manner prescribed in their contract.

The judgment of the special term should be reversed without costs; and as all the facts necessary to the adjudication of the case have been ascertained at the trial, and as it has not been brought for review before the general term upon any allegation of error on the trial, in the process of ascertaining facts, there is no necessity for ordering a new trial.

Judgment therefore should be entered for the plaintiffs without costs. (*Marquat* v. *Marquat*, 2 *Kernan*, 336.)

[NEW YORK GENERAL TERM, May 2, 1859. *Roosevelt*, *Davies* and *Clerke*, Justices.]